## ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* ARKANSAS COMMERCE COMM'N

5-5095                                                    449 S. W. 2d 198

Opinion delivered January 26, 1970

*Moses, McClellan, Arnold, Owens & McDermott,* for appellant.

No brief filed for appellees.

GEORGE ROSE SMITH, Justice. This is an application by the appellant, commonly called the Cotton Belt, for authority to close the railroad freight station at Fair Oaks, Arkansas. For many years the Cotton Belt and the Missouri Pacific Railroad Company jointly operated the Fair Oaks station, under an agreement made in 1912. In November, 1967, the Missouri Pacific elected to terminate the joint agreement, effective December 1, 1968. The Cotton Belt, foreseeing that the maintenance of the station would become solely its burden, gave notice of its intention to close the station. More than twenty-five electors of Fair Oaks filed a protest. After a hearing at which only one witness testified, the Cotton Belt's request was denied by the Commerce Commission.

This appeal is from a circuit court judgment sustaining the Commission's decision.

Under the statute a station may be closed upon a showing either that it has been operated at a financial loss for the immediately preceding year or that the closing will result in operating economies consistent with public convenience and necessity. Ark. Stat. Ann. § 73-809 (Supp. 1967); *Chicago, R. I. & P. R. R.* v. *Arkansas Commerce Comm'n*, 243 Ark. 661, 420 S. W. 2d 917 (1967). Here the Cotton Belt made no effort to show that the Fair Oaks station had been operated at a loss during the preceding year. "Quite the contrary," counsel state, "the Cotton Belt has been making a profit out of the station operation."

Instead, the applicant assumed the burden of showing that operating economies consistent with the public convenience will attend the closing of the station. To that end the railway's proof was directed largely toward showing that the shipping public will not be seriously inconvenienced if the station is shut down. The company proposes to serve Fair Oaks through its Brinkley station, thirty-three miles to the south, rather than through the present one-man facility at Fair Oaks. Some public inconvenience will admittedly result, because shippers will have to communicate with the Brinkley office by mail and by telephone instead of transacting their business over the counter at Fair Oaks.

To offset that inconvenience the applicant attempted to show that its entire system is being computerized, with the result that freight cars anywhere in the country can be located and assigned as needed within a matter of moments. That argument, however, is not wholly convincing; for there is nothing to indicate that the advantages of computerization would not be equally available to Fair Oaks shippers if their little station remained open.

We need not explore the niceties of public convenience, because that point was not the basis for the Commission's rejection of the Cotton Belt request. Under the statute the carrier had to show that the closing of the station would result in operating economies offsetting any added public inconvenience. On that score the applicant made no showing whatever except to introduce an exhibit detailing the cost of maintaining the Fair Oaks agency, which amounted to $4,906 in 1967.

The Commission found that evidence to be insufficient to meet the applicant's burden of proof. We quote the pertinent part of the Commission's decision:

> Mr. Puckett [the Cotton Belt's sole witness] also identified Exhibit No. 2, being a statement of station expenses at Fair Oaks, Arkansas, for the year 1967 . . . It is difficult to understand the purpose of this exhibit since the Applicant furnished no evidence whatever with reference to the income from the operation of the Fair Oaks station during the period of time reflected on said exhibit. In short, there is nothing before this Commission from which it can make any determination one way or the other as to operating economies. . . . There is absolutely nothing is this record to show that the Applicant has been operating at a financial loss according to standard accounting procedures for not less than one year preceding the filing of the application or that operating economies would result from the closing of the agency station. As we stated in our previous order, there is no other standard of comparison permitted. The Applicant has shown that it has not met the standard defined by the Act; as a consequence, the Commission finds [that the application must be denied.]

We are not prepared to say that the Commission was wrong in reaching the decision it did reach. There is some indication in the language we have quoted that

the Commission took the view that no operating economies could possibly result from the closing of the Fair Oaks station if its operation had shown a profit. We do not regard that view of the matter as being necessarily and invariably correct, for it might be true that the closing of a barely profitable station could result in even greater profits to the system as a whole without any offsetting inconvenience to the public. That possibility, however, is not established by the record before us.

In any event, whether the closing of the Fair Oaks station will lead to operating economies must evidently depend upon a comparison of the cost of maintaining that station with the cost of supplying the same services through the Brinkley station. Obviously some expense will be involved in having the Brinkley office do the same work that is now being done at Fair Oaks. It may be that the members of the Commission, with their expertise and experience, could have balanced those comparative costs without direct proof. We, however, cannot do so. The record tells us absolutely nothing about the cost of performing the required services from the Brinkley station. Hence, for want of proof, we are unable to say that the Commission's decision is against the clear weight of the evidence.

Affirmed.